UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

Case No. 3:20-cr-44-J-39PDB
Cts. 1-2: 18 U.S.C. § 1349

OSCAR MOLINA-AVILA

## INDICTMENT

The Grand Jury charges:

### COUNT ONE
### Wire Fraud Conspiracy
### (Universal Florida Construction LLC)

#### A. Introduction

At all times material to this Indictment:

1. Universal Florida Construction LLC ("Universal") was a limited liability company registered with the Florida Department of State. Universal was created on or about October 10, 2018, and its principal place of business was at an address in Orange County, in the Middle District of Florida.

2. Records of the Florida Department of State reflect that the managing member of Universal was an individual with the initials A.Y.R.

3. Under Florida law, any contractor or subcontractor who engages in any public or private construction must secure and maintain workers'

compensation insurance. *See* Fla. Stat. §§ 440.10(1)(a) and 440.38(1). A contractor must require a subcontractor to provide it with evidence that it has workers' compensation insurance for its workers. Fla. Stat. § 440.10(c). Failure to maintain workers' compensation insurance is a felony. Fla. Stat. § 440.105(4)(a) and (f).

4.    Proof of workers' compensation insurance is generally provided in the form of a Certificate of Liability Insurance declaring that the contractor or subcontractor has the insurance coverage. The certificate generally only states that the contractor or subcontractor has workers' compensation insurance and does not include the number of workers or the amount of payroll covered by the insurance policy.

5.    Construction contractors and subcontractors entered into agreements with the defendant, OSCAR MOLINA-AVILA, and Universal by which Universal facilitated the payment of workers, most of whom were undocumented aliens, for the contractors and subcontractors. By facilitating the payment of the workers through Universal, which was a shell company, the contractors and subcontractors could disclaim responsibility for ensuring (1) that the workers were legally authorized to work in the United States, (2) that required state and federal payroll taxes were paid, and (3) that adequate workers' compensation insurance was provided.

B. Charge

From an unknown date, but beginning no later than on or about October 10, 2018, through on or about September 28, 2019, in the Middle District of Florida, and elsewhere, the defendant,

OSCAR MOLINA-AVILA,

did knowingly and intentionally, combine, conspire, confederate, and agree with other persons, known and unknown, to transmit and cause to be transmitted by wire in interstate commerce writings, signs, signals, pictures, sounds, and communications, having devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent representations concerning workers' compensation insurance, as more fully described herein, for the purpose of executing such scheme and artifice and attempting to do so, in violation of 18 U.S.C. § 1343.

C. Manner and Means

The manner and means by which the conspirators carried out the conspiracy and the scheme and artifice to defraud included, but were not limited to, the following:

1.      On or about January 4, 2019, A.Y.R., on behalf of Universal, caused to be submitted, by electronic transmission in interstate commerce, a Florida Workers Compensation Application to NorGUARD Insurance Company

("NorGUARD") in the State of Pennsylvania, through Automatic Data Processing Insurance Agency, Inc. (ADPIA), located in the State of New Jersey. The application falsely represented that the workers' compensation insurance would cover an estimated annual payroll of $55,000. NorGUARD is a subsidiary of Berkshire Hathaway GUARD Insurance Companies ("GUARD"). GUARD maintains an on-line Policy Service Center with servers located in Pennsylvania.

2.     The submission of the workers' compensation insurance application caused NorGUARD to issue a workers' compensation insurance policy to Universal covering the period from January 4, 2019, until January 4, 2020. The annual premium for the policy was approximately $9,125, which was based on the information provided in the application, including the estimated payroll to be covered.

3.     Although the workers' compensation insurance premium was based on the representation that Universal had a total annual payroll of $55,000, the conspirators "rented" Universal's Certificate of Liability Insurance ("COI") to construction contractors and subcontractors located throughout the Middle District of Florida, including contractors and subcontractors located in Duval, Clay, and St. Johns Counties in the Jacksonville Division of this District.

4.     From on or about January 9, 2019, through on or about July 8, 2019, the conspirators requested, and caused to be requested, by electronic

transmission in interstate commerce, approximately 99 COIs from ADPIA servers in the State of Georgia, and provided the COIs, and caused them to be provided, to contractors and subcontractors in the Middle District of Florida. The purpose of providing the COIs to the contractors and subcontractors was to help carry out the scheme to defraud by falsely representing that Universal had sufficient workers' compensation insurance, as required by Florida law.

5. Although NorGUARD believed it was providing coverage for the $55,000 of payroll reflected in the workers' compensation insurance application, the conspirators' actions caused NorGUARD to in fact provide coverage for approximately $7,687,727 in payroll. If NorGUARD had known the amount of payroll it was in fact covering, it would have charged a premium of approximately $1,275,393.

6. The contractors and subcontractors wrote payroll checks to Universal for work performed during discrete pay periods. The conspirators deposited the payroll checks, or caused them to be deposited, into accounts at federally insured financial institutions.

7. During the period of the conspiracy, the conspirators deposited and caused to be deposited payroll checks totaling approximately $7,687,727. The conspirators kept approximately 6% of the payroll amount, or a total of approximately $461,263, as a fee.

5

8.      After depositing the payroll checks, the conspirators distributed the payroll remaining after deduction of the fee, and caused it to be distributed, to construction workers, usually through work crew leaders.  Many of the workers were undocumented aliens working illegally in the United States.

9.      The contractors and subcontractors writing payroll checks to Universal and the conspirators depositing those checks and distributing the payroll to the workers resulted in the concealment of the employment of undocumented aliens working illegally in the United States.

10.      Neither Universal nor the contractors and subcontractors paid either the workers' portion or the employers' portion of state and federal payroll taxes, such as for Medicare and Social Security, to the appropriate government authorities, in violation of state and federal law.

11.      Neither Universal nor the contractors and subcontractors provided adequate workers' compensation insurance for the workers, in violation of Florida law.

All in violation of 18 U.S.C. § 1349.

## COUNT TWO
## Wire Fraud Conspiracy
## (All National Remodeling LLC)

### A. Introduction

At all times material to this Indictment:

1.     All National Remodeling LLC ("All National") was a limited liability company registered with the Florida Department of State. All National was created on or about May 1, 2019, and its principal place of business was at an address in Orange County, in the Middle District of Florida.

2.     Records of the Florida Department of State reflect that the managing member of All National was an individual with the initials J.M.H.

3.     Under Florida law, any contractor or subcontractor who engages in any public or private construction must secure and maintain workers' compensation insurance. *See* Fla. Stat. §§ 440.10(1)(a) and 440.38(1). A contractor must require a subcontractor to provide it with evidence that it has workers' compensation insurance for its workers. Fla. Stat. § 440.10(c). Failure to maintain workers' compensation insurance is a felony. Fla. Stat. § 440.105(4)(a) and (f).

4.     Proof of workers' compensation insurance is generally provided in the form of a Certificate of Liability Insurance declaring that the contractor or subcontractor has the insurance coverage. The certificate states only that the

contractor or subcontractor has workers' compensation insurance and does not include the number of workers or the amount of payroll covered by the insurance policy.

5.  Construction contractors and subcontractors entered into agreements with the defendant, OSCAR MOLINA-AVILA, and All National by which All National facilitated the payment of workers, most of whom were undocumented aliens, for the contractors and subcontractors. By facilitating the payment of the workers through All National, which was a shell company, the contractors and subcontractors could disclaim responsibility for ensuring (1) that the workers were legally authorized to work in the United States, (2) that required state and federal payroll taxes were paid, and (3) that adequate workers' compensation insurance was provided.

## B. Charge

From an unknown date, but beginning no later than on or about May 1, 2019, through on or about March 11, 2020, in the Middle District of Florida, and elsewhere, the defendant,

OSCAR MOLINA-AVILA,

did knowingly and intentionally, combine, conspire, confederate, and agree with other persons, known and unknown, to transmit and cause to be transmitted by wire in interstate commerce writings, signs, signals, pictures, sounds, and

8

communications, having devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent representations concerning workers' compensation insurance, as more fully described herein, for the purpose of executing such scheme and artifice and attempting to do so, in violation of 18 U.S.C. § 1343.

### C. Manner and Means

The manner and means by which the conspirators carried out the conspiracy and the scheme and artifice to defraud included, but were not limited to, the following:

1. On or about June 11, 2019, J.M.H., on behalf of All National, caused to be submitted, by electronic transmission in interstate commerce, a Florida Workers Compensation Application to NorGUARD Insurance Company ("NorGUARD") in the State of Pennsylvania, through Automatic Data Processing Insurance Agency, Inc. ("ADPIA"), located in the State of New Jersey. The application falsely represented that the workers' compensation insurance would cover an estimated annual payroll of $100,000. NorGUARD is a subsidiary of Berkshire Hathaway GUARD Insurance Companies ("GUARD"). GUARD maintains an on-line Policy Service Center with servers located in Pennsylvania.

2. The submission of the workers' compensation insurance application caused NorGUARD to issue a workers' compensation insurance policy to All National covering the period from June 12, 2019, until June 12, 2020. The annual premium for the policy was $16,590, which was based on the information provided in the application, including the estimated payroll to be covered.

3. Although the workers' compensation insurance premium was based on the representation that All National had a total annual payroll of $100,000, the conspirators "rented" All National's Certificate of Liability Insurance ("COI") to construction contractors and subcontractors located throughout the Middle District of Florida, including contractors and subcontractors located in Duval, Clay, and Saint Johns Counties in the Jacksonville Division of this District.

4. From on or about June 18, 2019, through on or about January 24, 2020, the conspirators requested, and caused to be requested, by electronic transmission in interstate commerce, approximately 124 COIs from ADPIA servers in the State of Georgia and NorGUARD Agency Service Center in the State of Pennsylvania, and provided the COIs, and caused them to be provided, to contractors and subcontractors in the Middle District of Florida. The purpose of providing the COIs to the contractors and subcontractors was to help carry out the scheme to defraud by falsely representing that All National had sufficient workers' compensation insurance, as required by Florida law.

5.   Although NorGUARD believed it was providing coverage for the $100,000 of payroll reflected in the workers' compensation insurance application, the conspirators' actions caused NorGUARD to in fact provide coverage for approximately $9,087,874 in payroll.  If NorGUARD had known the amount of payroll it was in fact covering, it would have charged a premium of approximately $1,507,678.

6.   The contractors and subcontractors wrote payroll checks to All National for work performed during discrete pay periods.  The conspirators deposited the payroll checks, or caused them to be deposited, into accounts at federally insured financial institutions.

7.   During the period of the conspiracy, the conspirators deposited and caused to be deposited payroll checks totaling approximately $9,087,874.  The conspirators kept approximately 6% of the payroll amount, or a total of approximately $545,272, as a fee.

8.   After depositing the payroll checks, the conspirators distributed the payroll remaining after deduction of the fee, and caused it to be distributed, to construction workers, usually through work crew leaders.  Many of the workers were undocumented aliens working illegally in the United States.

9.   The contractors and subcontractors writing payroll checks to All National and the conspirators depositing those checks and distributing the payroll

to the workers resulted in the concealment of the employment of undocumented aliens working illegally in the United States.

10. Neither All National nor the contractors and subcontractors paid either the workers' portion or the employers' portion of state and federal payroll taxes, such as for Medicare and Social Security, to the appropriate government authorities, in violation of state and federal law.

11. Neither All National nor the contractors and subcontractors provided adequate workers' compensation insurance for the workers, in violation of Florida law.

All in violation of 18 U.S.C. § 1349.

## FORFEITURES

1. The allegations contained in Counts One and Two of this Indictment are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c).

2. Upon conviction of a conspiracy to violate 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1349, the defendant, OSCAR MOLINA-AVILA shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3.     The property to be forfeited includes, but is not limited to, the

following:

   a.     A sum of money equal to at least $461,263, which represents
          the approximate amount of proceeds the defendant OSCAR
          MOLINA-AVILA obtained as a result of the conspiracy and
          scheme to defraud alleged in Count One;

   b.     A sum of money equal to at least $545,272, which represents
          the approximate amount of proceeds the defendant OSCAR
          MOLINA-AVILA obtained as a result of the conspiracy and
          scheme to defraud alleged in Count Two;

   c.     A white 2006 Toyota Tundra, VIN 5TBET34106S550024;
          and

   d.     The sum of $23,074 in United States currency seized from
          H.C.M. on February 15, 2020.

4.     If any of the property described above, as a result of any act or

omission of the defendants:

   a.     cannot be located upon the exercise of due diligence;

   b.     has been transferred or sold to, or deposited with, a third
          party;

   c.     has been placed beyond the jurisdiction of the court;

   d.     has been substantially diminished in value; or

   e.     has been commingled with other property which cannot be
          divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to 21 U.S.C. § Section 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,

_____
Foreperson

MARIA CHAPA LOPEZ
United States Attorney

By: _____
MICHAEL J. COOLICAN
Assistant United States Attorney

By: _____
KELLY S. KARASE
Assistant United States Attorney
Deputy Chief, Jacksonville Division

No.

# UNITED STATES DISTRICT COURT
### Middle District of Florida
### Jacksonville Division

## THE UNITED STATES OF AMERICA

### vs.

## OSCAR MOLINA-AVILA

## INDICTMENT

Violations: Cts. 1-2:     18 U.S.C. § 1349

A true bill,

_____
Foreperson

Filed in open court this 11<sup>de</sup> day

of March, 2020.

_____
Clerk

Bail  $_____